UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JOSEPH MICHAEL LOGSDON, | : | NO. 1:05-CV-00541 |
| | : | |
| Plaintiff, | : | |
| v. | : | **ORDER** |
| | : | |
| | : | |
| CHARLES HAINS, et al., | : | |
| | : | |
| Defendants. | : | |

This matter is before the Court on Defendants Charles Hains and Daniel McShane's Motion to Dismiss and Memorandum in Support (doc. 6), Plaintiff's Memorandum Opposing Defendants' Motions to Dismiss (doc. 7), and Defendants' filing of state court transcripts (doc. 9). Also before the Court are Plaintiff's Motion for Order to Convert Defendants' Motion to Dismiss to a Proceeding for Summary Judgment and Publishing a Discovery Order (doc. 10), Defendants' Response in Opposition (doc. 12), and Plaintiff's Reply (doc. 14). Finally, before the Court are Plaintiff's Motion for Leave to File a Supplemental Memorandum Addressing the Preclusion Argument in Defendants' Rule 12(b)(6) Motion (doc. 11) and Defendants' Response in Opposition (doc. 13). For the reasons indicated herein, the Court GRANTS Defendants' Motion to Dismiss and DISMISSES this matter from the Court's docket.

## I.  BACKGROUND

In his Complaint for Money Damages, Plaintiff, Joseph Logsdon ("Logsdon"), alleges ten causes of action against Defendant

Cincinnati Police Officers Charles Hains and Daniel McShane in their individual capacities (doc. 1). Logsdon's claims arise from his arrests on two separate dates at Cincinnati Women's Services, a clinic that provides lawful abortions (Id.). Plaintiff Logsdon has for many years protested outside of local Cincinnati abortion clinics (Id.). He has a history of arrest and conviction related to his protests, usually for criminal trespass, for which he had eight prior convictions (Id.). Logsdon describes himself as a "regular presence" at the Cincinnati Women's Services clinic and acknowledges that "he has known for many years that he is not welcome on CWS property" (Id.).

### A.   The October 2003 Incident

On October 28, 2003, Plaintiff Logsdon was protesting on the public sidewalk in front of Cincinnati Women's Services and had placed a sign on a fence that borders the clinic's parking lot (Id.). It is undisputed that the clinic's director, Debi Jackson, removed the sign from the neighboring fence and walked toward the clinic, through the clinic's parking lot, with the intention of throwing the sign away (Id.). Plaintiff claims that after repeatedly demanding that Jackson return his sign, Plaintiff walked into the clinic parking lot, took the sign away from Jackson, and returned to his sidewalk protest (Id.). Jackson then called the police (Id.). Defendant Officer Hains responded to the call, arrested Logsdon, and charged him with criminal trespass and

2

disorderly conduct (Id.).  Plaintiff remained in the Hamilton County Justice Center for approximately four hours and was released on bond (Id.).

Plaintiff's Complaint notes that Officer Hains was not present for the interaction between Jackson and Plaintiff, and that Hains did not, himself, witness a crime (Id.). In addition, Plaintiff contends that Officer Hains knew or should have known that Plaintiff Logsdon's entry onto the clinic's property was privileged (Id.).  Further, Plaintiff claims that Officer Hains responded to a fellow protestor who attempted to tell Hains what she had seen with, "Tell it to the judge" (Id.).

**B.  The June 2004 Incident**

On June 18, 2004, Plaintiff Logsdon was again protesting on the public sidewalk in front of the Cincinnati Women's Services clinic (Id.).  According to the Complaint, Logsdon walked into the public park contiguous to the clinic's parking lot to talk, through the chain link fence separating the properties, to a woman who was in the clinic parking lot (Id.).  Plaintiff claims that he did not, at any point during this exchange, enter the clinic property (Id.). Plaintiff Logsdon contends that someone from the clinic staff called the police alleging that Plaintiff had trespassed onto clinic property and Defendant McShane responded to the call (Id.). According to the Complaint, Officer McShane, without a warrant, arrested Logsdon, placed him in handcuffs and transported him to

3

the Hamilton County Justice Center, where he was charged with criminal trespass and remained in custody for approximately four hours until his release on bond (Id.). As before, Plaintiff Logsdon notes in his Complaint that the arresting officer was not present for the incident and had not himself witnessed a crime (Id.). In addition, Plaintiff contends that Officer McShane ignored the attempts of a fellow protestor to provide their account of what had transpired (Id.).

## II.  PROCEDURAL HISTORY

As a result of the October 2003 incident, Logsdon was tried for disorderly conduct and trespassing before Judge Lisa Allen of the Hamilton County Municipal Court.[1] Judge Allen denied Logsdon's repeated motions to dismiss the trespassing case against him, rejecting Logsdon's argument that his retrieval of his poster was privileged under the law. However, Judge Allen found Logsdon not guilty of disorderly conduct. On the trespassing conviction, Judge Allen fined Logsdon $100 and court costs, placed him on probation, and ordered him to stay away from the clinic.[2]

---

[1] The Court takes judicial notice of the cited proceedings, and the transcripts of the proceedings put into evidence by Defendants. A.G. Reeves v. Weiss, 119 F.2d 472, 474 (6th Cir. 1941)(Court may take judicial notice of proceedings in a related case).

[2] Judge Allen sentenced Logsdon on June 1, 2004, but stayed execution pending appeal. Despite the stay of the sentence, Judge Allen told Defendant, "I just want you to stay away [from the clinic]." Defendant obviously interpreted the stay of his sentence to permit him to return to the clinic, where some

Logsdon appealed his sentence.  Judge Mark Painter, of the First Appellate District of the Ohio Court of Appeals, reversed Logsdon's trespassing conviction, finding that Plaintiff was privileged to enter the clinic property for the short time that he did in order to retrieve his sign.  Ohio v. Joseph Logsdon, 160 Ohio App.3d 517, No. C-040405, 2005-Ohio-1875, (Ohio Ct. App., April 22, 2005).  Judge Painter commented that the "whole matter was blown way out of proportion," and that the incident should have ended after the initial confrontation.  Id.

The incident did not end then, nor was the conflict put to rest subsequent to Judge Painter's decision.  Having successfully challenged his criminal conviction, Plaintiff filed the instant Complaint on August 16, 2005, challenging the legality of his arrests both in October 2003 and June 2004, seeking monetary damages and attorney fees (doc. 1).  Plaintiff alleges that Defendant Officers denied him his federal and state constitutional free speech rights, his federal constitutional right to assembly, his federal and state constitutional rights to be free from unreasonable search and seizure, and are liable to him for false arrest, false imprisonment, and malicious prosecution (Id.).

On December 8, 2005, Defendants Hains and McShane filed the present Motion to Dismiss, arguing that Plaintiff has failed to state a claim upon which relief may be granted, that Defendants are

---

seventeen days later Officer McShane arrested him.

5

entitled to qualified immunity from suit on the federal claims and to statutory immunity on the state claims (doc. 6).  Plaintiff filed his Memorandum in Opposition to Defendants' Motion to Dismiss (doc. 7).

## III.  APPLICABLE LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) requires the Court to construe the complaint in the light most favorable to the plaintiff, Block v. Ribar, 156 F.3d 673, 677 (6th Cir. 1998), accept as true all the Complaint's factual allegations, Broyde v. Gotham Tower, Inc., 13 F.3d 994, 996 (6th Cir. 1994), and determine whether "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  See also Ziegler v. IBP Hog Mkt., Inc., 249 F.3d 509, 511-12 (6th Cir. 2001).  A court's decision to grant a motion to dismiss may not be based upon a disbelief of the Complaint's factual allegations. Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995) (courts should neither weigh evidence nor evaluate the credibility of witnesses). Instead, in its scrutiny of the complaint, the Court must construe all well-pleaded facts liberally in favor of the party opposing the motion.  Scheuer v. Rhodes, 416 U.S. 232, 236,  94 S.Ct. 1683, 1687 (1974)(overruled on other grounds).  Indeed, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the

6

allegations." <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984).
The question before the Court considering a motion to dismiss is
"not whether [the] plaintiff will ultimately prevail but whether
the claimant is entitled to offer evidence to support the claims."
<u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).

The admonishment to liberally construe the plaintiff's
claim when evaluating a Rule 12(b)(6) dismissal does not relieve a
plaintiff of his obligation to satisfy federal notice pleading
requirements and allege more than bare assertions of legal
conclusions.  Wright, Miller & Cooper, Federal Practice and
Procedure: § 1357 at 596 (1969).  "In practice, a complaint . . .
must contain either direct or inferential allegations respecting
all of the material elements [in order] to sustain a recovery under
some viable legal theory."  <u>Car Carriers, Inc. v. Ford Motor Co.</u>,
745 F.2d 1101, 1106 (7th Cir. 1984)(<u>quoting</u> <u>In Re: Plywood</u>
<u>Antitrust Litigation</u>, 655 F.2d 627, 641 (5th Cir. 1981)).

**IV.  DEFENDANTS' MOTION TO DISMISS**

Defendants move to dismiss Plaintiff's Complaint on the
following grounds: (1) Plaintiff's failure to plead a federal
constitutional claim; (2) the Officers' assertion that they are
entitled to qualified immunity from suit; (3) issue preclusion; (4)
lack of justification for pendent jurisdiction; and (5) failure to
adequately plead state tort claims (doc. 6).

### A.    Defendants' Attack on Plaintiff's Constitutional Claims

Plaintiff Logsdon claims that his Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures were violated when the two officers arrested him without a warrant (doc. 1).  As a result of his arrests, he alleges he was prevented from continuing his protest on October 28, 2003, and June 18, 2004; thus giving rise to a violation of his First Amendment rights to freedom of speech and freedom of assembly  (Id.).

Defendants argue that Plaintiff fails to allege a First Amendment retaliation claim, as the officers were alleged merely to have responded to telephone calls, and the officers are not alleged to have acted with malice (doc. 6).  Defendants further argue that the Complaint fails to allege that the officers arrested Logsdon without probable cause (Id.).  Defendants argue that Plaintiff is precluded from relitigating the issue of lack of probable cause before this Court based on the fact that Logsdon's motion to dismiss the trespassing case against him was litigated before the state court judge, and denied (Id.).

Plaintiff responds that he has not alleged retaliation for First Amendment activity, but rather has simply alleged that Defendants' actions in removing him from the public sidewalk, when he had done nothing wrong, was a per se violation of his First Amendment freedoms in violation of clearly established law (doc. 7).   Plaintiff  further  argues  that  the  two  arrests  were

unreasonable and unsupported by probable cause (Id.).  He argues
Defendants witnessed no crimes, and deliberately disregarded the
testimony of other protesters (Id.).   Plaintiff argues that
Defendants' citation to the transcript from the state court
proceeding "goes outside the record and beyond the allegations in
the Complaint by flirting with a preclusion argument with respect
to 'probable cause'" (Id.).

> ### 1.   The Trial Court Did Not Consider the Issue of Probable Cause.

Although the state trial court denied Logsdon's motion to
dismiss the criminal complaint against him, therefore giving
credence to the propriety of the October 2003 arrest, the state
trial court never explicitly addressed the question of probable
cause.  The issue of probable cause was not actually litigated, and
no state court issued a final decision on the specific question.
Hollins v. Massanari, 49 Fed. Appx. 533, 535 (6th Cir. 2002)(issue
preclusion only applies if "the issue was actually litigated and
decided in the prior action")(quoting Hammer v. Immigration and
Naturalization Serv., 195 F.3d 836, 840 (6th Cir. 1999)).   The
court's review in the state matter pertained to Logsdon's actions
and not those of the arresting officers.  For this reason the Court
does not find that issue preclusion is applicable here.

> ### 2.   Plaintiff's Claims Turn on Probable Cause

All of Plaintiff's present claims arise from the alleged

impropriety of his arrest.  His Fourth Amendment claims clearly

relate to his arrests, and his First Amendment claims are grounded

in the theory that his arrests impeded his freedom of expression

and of assembly.  Should the arrests be supported by probable

cause, then none of Plaintiff's constitutional claims survive.

Having reviewed this matter, the Court finds the arresting

officers, in relying on testimony of a reliable witness and finding

Logsdon at the scene of the alleged trespass, reasonably believed

that Plaintiff committed trespass.  Accordingly the Officers had

probable cause.

        "A police officer has probable cause if there is a fair

probability that the individual to be arrested has either committed

or intends to commit a crime."  Fridley v. Horrighs, 291 F.3d 867,

872 (6th Cir. 2002) (internal quotation and citations omitted).

Officers determine the existence of probable cause based on the

facts and circumstances that are both within their knowledge at the

time of the arrest and are sufficient to inform a "prudent person,

or one of reasonable caution," that the suspect "has committed, is

committing, or is about to commit an offense."   Michigan v.

DeFillippo, 443 U.S. 31, 37 (1979).  The law accepts the risk that

officers may stop and even arrest the innocent.   Illinois v.

Wardlow, 528 U.S. 119, 126 (2000).  "Indeed the Fourth Amendment

accepts that risk. . . persons arrested and detained on probable

cause to believe they have committed a crime may turn out to be

innocent." Id.    Finally, a warrantless arrest for a misdemeanor does not violate Fourth Amendment rights where probable cause is established.  Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001).

### 3.    The October 2003 Incident: Plaintiff's Entry Ultimately Determined Privileged

Plaintiff argues Defendant Hains improperly arrested him in October 2003, for trespass, by failing to listen to the testimony of his fellow protesters and for failing to ascertain that his entry onto the clinic property was privileged.  In Ohio, criminal trespass, a fourth degree misdemeanor, is codified in the Ohio Revised Code Section 2911.21, providing in relevant part that "No person, without privilege to do so, shall. . . [k]nowingly enter or remain on the land or premises of another."  Privilege encompasses "immunity. . . growing out of necessity."  Ohio Rev. Code § 2901.01.

The Court finds two Sixth Circuit cases instructive here. First, in Estate of Dietrich v. Burrows, 167 F.3d 1007 (6th Cir. 1999), the court held that the arresting officers did not have probable cause when they knew of "facts and circumstances that conclusively established, at the time of [the arrest]" that the suspect had an affirmative defense to the crime for which he was detained.  Id. at 1012.  Next, in Painter v. Robertson, 185 F.3d 557 (6th Cir. 1999), the court held that determinations of probable

11

cause include "facts and circumstances establishing a statutorily legitimated affirmative justification for the suspected criminal act." Id. at 570, citing Dietrich, 167 F.3d at 1013-14. However, the Painter court made two critical clarifications about its holding: first, it held that an officer "may not ignore information known to him which proves that the suspect is protected by an affirmative legal justification." Id. at 571. Second, the court stated in a footnote that it was emphatically not requiring

> that law enforcement operatives should conduct quasi-trials as a necessary predicate to the warrantless arrests of perpetrators ... Rather, this court ... merely resolves that, where a reasonable officer would conclusively know that an investigative target's behavior is protected by a legally cognizable affirmative defense, that officer lacks a legal foundation to arrest that person for that behavior (Id. at n. 21).

Thus, as noted by the Sixth Circuit, "it is clear that a police officer is not required to inquire into facts and circumstances in an effort to discover if the suspect has an affirmative defense." Fridley, 291 F.3d at 873. Indeed, and relevant here, the court held that "[e]ven if circumstances suggest that a suspect may have an affirmative defense, if a reasonable officer would not 'conclusively know' that the suspect is protected by the defense, then he is free to arrest the suspect provided that there is probable cause to do so." Id.

Thus, the inquiry becomes whether Officer Hains had probable cause to arrest Logsdon based on the phone call from the clinic and whether a reasonable officer would "conclusively know"

12

that Logsdon would be protected against a charge of criminal trespass with a defense of privilege to enter to recover his property.

The Court finds under the circumstances presented here, Officer Hains had probable cause to arrest Logsdon based on the phone call from the clinic. Where a citizen-informant is also the apparent victim of a crime in question, her report is entitled to great weight when determining the existence of probable cause. See, e.g., Adams v. Williams, 407 U.S. 143, 147 (1972)(information provided to police by victims of crime should not be thwarted by "subtleties of the hearsay rule"); Ahlers v. Schebil, 188 F.3d 365, 370 (6th Cir. 1999)("An eyewitness identification will constitute sufficient probable cause unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation."). In 2003, the Sixth Circuit observed that the court "has consistently upheld arrests that were predicated upon witness identifications." Banks v. Kentucky State Police, 57 Fed.Appx. 242 (6th Cir. 2003)(finding "ample probable cause" for arrest of suspect for domestic violence based on call from victim). Here the facts and circumstances within Officer Hain's knowledge were sufficient to lead a person of reasonable caution to conclude Plaintiff had trespassed. Officer Hains responded to a call for

13

help at a location that has been the target of trespass offenders, including Plaintiff, on numerous occasions.  Officer Hains was not responding to an anonymous tip, and there was no question Plaintiff had been on the property.  Officer Hains was not unreasonable in concluding that Plaintiff had trespassed.[3]

Should Officer Hains have conclusively known that Logsdon's trespass was privileged under common law principles?  The Court cannot impose such a burden on the Officer here, as even the state trial court judge erred on the question.  Privilege encompasses "immunity. . . growing out of necessity."  Ohio Rev. Code § 2901.01.  A reasonable officer might have found it not a

---

[3] See, United States of America v. Reed, 220 F.3d 476 (6th Cir. 2000), where the Defendant argued, in reliance on Washington v. Blair, 827 P.2d 356 (Wa. 1992), that the officers needed to have concluded prior to the arrest for trespassing whether he was privileged to enter or remain on the property.  Id. at 479.  The Sixth Circuit rejected the reasoning of Washington, finding that it "was based upon a requirement negating the affirmative defense of privilege prior to arresting a person for trespass. *This Circuit does not require such an added inquiry to the probable cause determination*."  Id. (emphasis added).  Judge Gilman, in his dissent, took issue with this characterization of the Washington state decision and presented  Virginia and Maryland state court decisions to support his interpretation that the requirement was, instead, that the officer must have "probable cause to believe that the defendant was on the property without a legitimate purpose at the time of his arrest."  Id. at 480-81.  Interestingly, however, Judge Gilman presented a hypothetical scenario that serves to bolster Officer Hains's position in the instant case: "[L]et us assume that [the] apartment manager had informed the officers that Reed was trespassing.  The officers would then have had probable cause to arrest Reed for criminal trespass....[They] would have had probable cause to arrest and would not have had to dispel every innocent explanation."  Id. at 482.

14

necessity for Logsdon to retrieve his poster.   Officer Hains was entitled to give little credence to Logsdon's fellow protestors and encourage them to take their testimony to the judge.   Hains had a legal foundation for the arrest based on probable cause, and Hains was not required to conduct a quasi-trial in order to determine that Logsdon's trespass was technically privileged.

For these reasons, the Court concludes that Plaintiff fails to state federal constitutional claims against Officer Hains.

### 4.  The June 2004 Incident

The June 2004 incident presents a closer case.   In this incident, Logsdon did not actually enter the property.   Officer McShane responded to a call for help from the clinic alleging that Logsdon had trespassed.   McShane found Logsdon near the clinic, gave credence to the clinic's charge that Logsdon trespassed, and arrested Logsdon.

Taking into consideration the facts and circumstances in Officer McShane's knowledge that day, the Court again concludes that his actions were not objectively unreasonable, although McShane was ultimately mistaken.   McShane, like Hains, confronted circumstances in which a repeat offender was near the premises again.   The Court does not find that McShane was objectively unreasonable in granting credence to the phone caller over Logsdon. As the Wardlow Court indicated, officers may arrest innocent people and still be within the law.   Illinois v. Wardlow, 528 U.S. 119,

15

126 (2000).  This is one such case.


B.    **Defendants Invoke the Doctrine of Qualified Immunity**

Officers Hains and McShane assert that they are entitled to qualified immunity against the federal claims lodged by Plaintiff (doc. 6). Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).   The focus of the inquiry is "whether the officer had fair notice that her conduct was unlawful" and the concept of reasonableness "is judged against the backdrop of the law at the time of the conduct." Brosseau v. Haugen, 543 U.S. 194, 198 (2004)

The Sixth Circuit utilizes a three-part test to analyze claims of qualified immunity: whether the facts, viewed in the light most favorable to the plaintiff, demonstrate that a constitutional or statutory violation has occurred; whether the violation concerned a clearly established right of which a reasonable person would have known; whether the plaintiff has offered sufficient evidence to indicate that the alleged act was objectively unreasonable in light of the clearly established constitutional or statutory right.  Feathers v. Aey, 319 F.3d 843,

16

848 (6th Cir. 2003).

The Court first must address whether Plaintiff Logsdon has alleged facts which, when viewed in the light most favorable to him, demonstrate the Officers' conduct violated his First and Fourth Amendment rights. As indicated above, the viability of Plaintiff's claims relies on whether the Officers had probable cause to arrest him. The Court has already found that both Officer Hains and McShane had probable cause. As such, the facts do not show that a constitutional violation has occurred.

However, even if the Court has erred in such determination, the Court is confident that a reasonable officer would not necessarily have understood that arresting Logsdon would amount to a constitutional violation, and Plaintiff has failed to offer evidence showing that his arrest was objectively unreasonable. "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." Id. citing Saucier v. Katz, 533 U.S. 194, 206 (2001). Here, Officer Hains was clearly reasonable in arresting Logsdon, as evidenced by the state trial court's decision that in no way threw into question the validity of the arrest and which actually found Logsdon guilty of trespassing. As for Officer McShane, the case is closer, but at worst, McShane reasonably misapprehended the law governing the circumstances he discovered. Indeed his arrest of

17

Logsdon may even fall within the "hazy border" between the permitted and proscribed, but as such, it is not a clearly established violation, and McShane is entitled to qualified immunity.

### C.  Plaintiff's State Law Claims

Having thus dismissed Plaintiff's federal claims, the Court finds that its conclusion that Defendants had probable cause to arrest Logsdon similarly results in the disposition of his state law claims for false arrest, false imprisonment, and malicious prosecution.  Trussell v. General Motors Corp, 53 Ohio St.3d 142, 559 N.E.2d 732 (Ohio, 1990)(lack of probable cause necessary element of the tort of malicious prosecution); Bennett v. Ohio Dept. Of Rehabilitation and Correction, 60 Ohio St. 3d 107, 109, 573 N.E.2d 633 (Ohio, 1991)(claim for false imprisonment requires showing of confinement without lawful privilege); Barnes v. Meijer Dept. Stores, No. CA2003-09-246, 2004 Ohio App. LEXIS 1528, *8 (Ohio Ct. App., April 5, 2004)(elements for false imprisonment and false arrest are the same, both require showing of the unlawfulness of the detention).  Defendants lawfully arrested Logsdon based on their finding of probable cause that he had trespassed.

## V.  OTHER PENDING MOTIONS

This Order dismissing the case addresses the issues raised by Plaintiff in both his Motion for Order to Convert Defendants' Motion to Dismiss to a Proceeding for Summary Judgment

and Publishing a Discovery Order (doc. 10), and his Motion for
Leave to File a Supplemental Memorandum Addressing the Preclusion
Argument in Defendants' Rule 12(b)(6) Motion (doc. 11). As for the
former motion, the Court took judicial notice of the trial court
transcript and sentencing, which effectively resulted in its
disposition; as for the latter, the Court rejected Defendant's
Preclusion argument. In any event, the dismissal of this case
terminates these pending motions.

## VI.  CONCLUSION

Having reviewed this matter, the Court finds that
Plaintiff has not adequately alleged a constitutional claim under
any theory because the officers had probable cause to arrest him
for trespassing. The Court further finds the Defendants are
entitled to qualified immunity, as Plaintiff has not alleged a
clearly established constitutional violation under the facts of
this case.

Plaintiff is a regular at the clinic. Plaintiff is an
admitted chronic trespass offender. The reality is that his
actions set up the course of events underlying his Complaint. The
Court is not disposed to serve as a forum for a litigant who sets
up a conflict situation, and then seeks to benefit from it by suing
law enforcement officers who arrive on the scene to ensure order.

Accordingly, for the reasons indicated herein, the Court
GRANTS Defendants' Motion to Dismiss (doc. 6), DENIES Plaintiff's

Motion for Order to Convert Defendants' Motion to Dismiss to a
Proceeding for Summary Judgment and Publishing a Discovery Order
(doc. 10), and DENIES AS MOOT  Plaintiff's Motion for Leave to File
a Supplemental Memorandum Addressing the Preclusion Argument in
Defendants' Rule 12(b)(6) Motion (doc. 11).


                SO ORDERED.

Dated: June 27, 2006              /s/ S. Arthur Spiegel

                                  S. Arthur Spiegel
                                  United States Senior District Judge